A. S. PALMERLEE v. CHICAGO GREAT WESTERN RAILROAD COMPANY AND ANOTHER.
CHICAGO & NORTHWESTERN RAILWAY COMPANY, APPELLANT.

A. S. PALMERLEE v. CHICAGO GREAT WESTERN RAILROAD COMPANY.
CHICAGO GREAT WESTERN RAILROAD COMPANY, APPELLANT.[1]

June 2, 1922.

Nos. 22,838, 22,837.

Railroad and Warehouse Commission — authority to order construction of union station at crossing.

1. The statutes of this state do not expressly confer upon the Railroad and Warehouse Commission the power and authority to require intersecting railroad companies to construct and maintain a joint or union station at the point of crossing, and whether such authority is conferred by necessary implication, arising from the general control vested in the commission of railroad affairs, is left undecided.

Unauthorized order reversed.

2. Conceding the implied authority, it is *held* that the order to the effect stated in the opinion and involved on the appeal, is an unlawful

[1]Reported in 188 N. W. 328.

invasion of the property rights of the affected railroad companies, and therefore unauthorized and void.

From an order of the Railroad and Warehouse Commission directing the construction of a passenger station and other buildings at Dodge Center, the Chicago Great Western Railroad Company and the Chicago & North Western Railway Company appealed to the district court for Dodge county where the appeal was heard by Childress, J., who made findings and affirmed the order of the commission. From the judgment entered pursuant to the order for judgment, defendants took separate appeals. Reversed.

*Briggs, Weyl & Briggs,* for appellant Chicago Great Western Railroad Co.

*Brown, Somsen & Sawyer,* for appellant Chicago & North Western Railway Co.

*Clifford L. Hilton,* Attorney General, *Henry C. Flannery,* Assistant Attorney General, and *Charles E. Schwarg,* for respondent.

BROWN, C. J.

Appeal from a judgment of the district court of Dodge county in all things affirming an order of the Railroad and Warehouse Commission directing and requiring defendants to construct and maintain a joint or union station at the intersection or crossing of their respective lines of railroad at the village of Dodge Center.

The facts are not in dispute. The Chicago & North Western Railroad Company, one of the defendants, many years ago constructed and has since maintained a depot or station building upon its right of way substantially within the center of the village, suitable and sufficient in size and capacity for all purposes of passenger and freight traffic on its line. The line of the Chicago & Great Western Railroad Company, the other defendant, crosses that of the North Western Company at right angles on the easterly outskirts of the village at a point some 1,800 feet east of the station building of the latter company. It has its own station, located upon its right of way at the point of intersection, at which all business in connection

with passenger and freight traffic is conducted by its agents and employes; all trains stop there to take on or discharge passengers.

The trains of the North Western Company stop at the crossing, as well as at the up-town station, to receive passengers from and to discharge passengers for the Great Western line, and for their accommodation and convenience the company has constructed a platform adjacent to its track a distance of some hundred or more feet. There is no covering over the platform, and a requirement that one be erected is a part of the order of the warehouse commission here under review. During the year a great many passengers from both roads transfer at the crossing to points on the lines of each, and the facilities for such transfer as now existing are claimed by the railroad companies to be ample and sufficient for the purpose.

The village has a population of about 1,100.

The petition on which the order in question was made was presented by a dealer in business near the Great Western station, and was supported by a number of other persons both resident and non-resident of the village. After due hearing the warehouse commission made and filed an order, including therein the general and necessary finding or conclusion that public interests will be promoted by a joint or union station building at the crossing, and to that end directed

"That the Chicago Great Western Railroad Company be and the same is hereby required to build and maintain a good and sufficeint passenger station building at Dodge Center, Dodge County, Minnesota, having separate waiting rooms for men and women  *  *  *; that arrangements be made for the sale of Northwestern passenger tickets at this station; that the Chicago & North Western Railway Company be and the same is hereby required to widen its present platform to the width of not less than twelve feet, and to erect a canopy over a part of the same for the protection of passengers and property; that the North Western pay all of the cost of widening the platform and building the canopy along its own track and one-fourth ($\frac{1}{4}$) of the cost of the improved facilities to be built by the Great Western."

Both railroad companies appealed to the district court where, as already stated, the order was affirmed by the judgment of that court.

We have no statute in this state directly conferring upon the Railroad and Warehouse Commission power and authority to order and require the construction and maintenance by intersecting railroads of a union station at crossings like that here shown, or at all. The legislature has not spoken on the question. But if it be conceded that the power exists under the general statutory authority over the conduct and affairs and the operation of railroads, so far as they relate to and affect public interests, we are clear that the authority was not properly exercised in this instance. The order and the requirements thereof invade the property rights of the respective railroad companies to an extent not sanctioned by law. It imposes upon the Great Western Company the burden of constructing and maintaining the proposed station, of modern design and equipment, onefourth of the cost of which it cast upon the North Western Company. But subsequent to the construction the Great Western Company is required to keep and maintain the station, heat, light, repair and general up-keep—at its own expense, no part thereof being placed upon the North Western Company; the Great Western Company must maintain the station for the joint benefit of both companies, without remuneration or contributions from the North Western. And further, the new building will be constructed upon the property of the Great Western Company, with no provision for the joint or other occupancy by the North Western Company, although that company contributes one-fourth the cost of construction, thus casting a burden upon the North Western Company without compensation or benefit in return.

We have no statute authorizing such an apportionment of rights and liabilities in a situation of the kind, and the power and authority to so determine the legal rights of the parties does not exist in the commission, an administrative body, at common law, nor under its general statutory authority.

While it seems probable that the legislature should speak first upon this subject, we are not to be understood as holding that the

authority may not exist in the commission by necessary implication to require a union station at a railroad junction, upon terms not in conflict with constitutional principles. We do not consider the point. But for the reasons stated, and we refrain from a general discussion of the subject, this order cannot be sustained.

Judgment reversed.